UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                 CASE NO. 3:16cr66-MCR

KELVIN JEROME SANDERS,

    Defendant.

_____/

### ORDER

Pending before the court is Defendant's Motion to Suppress two firearms he claims were unlawfully seized based on a warrant that was not supported by probable cause. ECF No. 23. The Government opposes the motion. Having fully reviewed the matter, the court finds that the motion can be decided without an evidentiary hearing, and the motion is due to be denied.[1]

---

[1] The court finds it appropriate to take this motion under submission without an evidentiary hearing. The probable cause determination presents a question of law. *See United States v. Allison*, 953 F.2d 1346, 1350 (11th Cir. 1992) (stating that "[t]he question of what amounts to probable cause is purely a question of law"). Defendant's motion "turns on whether the facts alleged in the search warrant affidavit suffice to support a finding of probable cause," and because there are no disputed issues of fact, there is no need for an evidentiary hearing to resolve factual issues. *United States v. Brown*, CR 13-0235-WS, 2014 WL 11381173, at *1 n.1 (S.D. Ala. Jan. 22, 2014); *see also United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000) (stating no evidentiary hearing is necessary where the defendant fails to allege facts that, if proved, would require the suppression of evidence).

**Background**

Defendant has been charged by federal indictment with one count of being a felon in possession of a firearm, namely, a Sig Sauer .40 caliber pistol and a Glock .40 caliber pistol, in violation of 18 U.S.C. § 922(g). The firearms were seized during the execution of a search warrant at a residence located on Exxx Sxxx Drive, Pensacola, Florida, which is the private residence of Defendant's girlfriend, Sherrika Gary. Defendant questions whether the warrant was supported by probable cause.

On February 3, 2016, two warrant affidavits were signed by Escambia County Sheriff's Office Investigator Brett McCormack, one pertaining to the Exxx Sxxx Drive residence and another pertaining to a residence located on Rxxx Lxxx.[2] In both affidavits, McCormack described an ongoing investigation targeting Defendant as part of a drug trafficking operation responsible for distributing large quantities of cocaine. McCormack set out his contacts with a Confidential Informant ("C.I."), who informed McCormack that Defendant had long been selling drugs and was currently selling drugs from a residence on Rxxx Lxxx, which the C.I. identified. The affidavits stated that within the past 40 days, two officers on bike patrol had

---

[2] Defendant's motion is premised on his argument that the affidavit pertaining to the Rxxx Lxxx address did not support the search of the residence located on Exxx Sxxx Drive. However, the Government's exhibits show that a separate affidavit was signed in support of the search of the Exxx Sxxx Drive residence.

approached the passenger side of a black Toyota Tundra vehicle and observed a man in the driver's seat with a large quantity of cocaine in his lap, whom one of the officers later identified as the Defendant after observing his photograph. When commanded to exit the vehicle, however, Defendant placed the vehicle in reverse and fled the area, nearly hitting the officers. Records reflected that the vehicle was registered to the Defendant at the Exxx Sxxx Drive address. The affidavits also described a controlled drug transaction between the C.I. and Defendant that occurred within the past 10 days at a convenience store known as T5 Brothers, during which Defendant drove a Ford F-150 vehicle with Illinois plates. Defendant was observed leaving the Rxxx Lxxx residence, driving the Ford F-150 to the transaction, meeting the C.I. at the convenience store where the C.I. purchased cocaine from Defendant, and returning to Rxxx Lxxx after the transaction. Based on this information, McCormack applied for and received a search warrant on February 3, 2016, for the Rxxx Lxxx address, authorizing a search for cocaine as well as currency, drug paraphernalia and papers, photographs or communications devices pertaining to the drug trafficking operation.

In the other affidavit, McCormack included the above information and also stated that within the past 10 days, he had conducted surveillance at the Exxx Sxxx

Drive residence and had observed the same Ford F-150 (that is, the vehicle Defendant drove during the convenience store drug transaction) parked in the driveway of the Exxx Sxxx Drive residence every night. He had also seen Defendant exiting the Exxx Sxxx Drive residence and leaving in the Ford F-150 during the day. McCormack detailed his years of training and experience investigating narcotics offenses and stated that, based on this training and experience, he knows that persons involved in illegal drug activity commonly use their residences and vehicles to facilitate the illegal activity, often storing records and documents of sources, customers, transactions, communication devices, photographs, and currency vital to carrying on or concealing the illicit drug activity in their homes or vehicles. Based on this affidavit, the state court circuit judge also issued a search warrant on February 3, 2016, for currency, documents and records, photographs, or communication devices related to drug trafficking located within the Exxx Sxxx Drive residence, its curtilage, and outbuildings.

Both warrants were executed on February 11, 2016. During the search of the Exxx Sxxx Drive residence, the Defendant was present, and the firearms at issue were seized. Defendant was arrested and charged under state law with possession of firearms and ammunition by a convicted felon; possession of controlled substances

(hydrocodone and promethezine with codeine) without a prescription; and possession of drug paraphernalia. Defendant was subsequently charged in federal court with being a felon in possession of firearms.

**Discussion**

The Fourth Amendment guarantees the right to be free from "unreasonable searches and seizures," safeguarded by the requirement that search warrants be issued based on oath and probable cause. U.S. Const. amend. IV. There are four prerequisites to the issuance of a search warrant: (1) probable cause, (2) an oath or affirmation, (3) a particular description of the place to be searched, and (4) a particular description of the type of evidence sought. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004). Only the first requirement is at issue here–whether the warrant was supported by probable cause.

A search warrant can be "issued only when there is probable cause to believe that an offense has been committed and that evidence exists at the place for which the warrant is requested." *United States v. Betancourt*, 734 F.2d 750, 754 (11th Cir. 1984). To make this determination, the court considers whether the "totality of the circumstances" shows that "there is a fair probability of finding contraband or evidence at a particular location." *United States v. Martinelli*, 454 F.3d 1300, 1307

(11th Cir. 2006) (quoting *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999)). The affidavit must include facts sufficient to provide a "'substantial basis for concluding' that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (internal alterations omitted) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). The issuing judge is permitted to draw reasonable inferences using common sense, *id.* at 238-40, mindful that probable cause is a "fluid concept," *id.* at 232. The information in the affidavit must "establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity;" also, the information supporting probable cause must be "fresh." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002). In reviewing a probable cause determination, courts are to view the issuing judge's conclusion with "great deference." *Gates*, 462 U.S. at 236. Because there is "a strong preference for warrants" and reasonable minds can differ as to whether an affidavit establishes probable cause, in a doubtful or marginal case, a search warrant may be sustained based on the "great deference" accorded to the issuing judge's conclusion. *United States v. Leon*, 468 U.S. 897, 914 (1984) (also cautioning that the deference due "is not boundless" and setting out four exceptions). The Eleventh Circuit instructs that according great deference means the issuing judge's determination of

probable cause is "conclusive, if reasonable, absent arbitrariness." *United States v. Sweeting*, 933 F.2d 962, 964 (11th Cir. 1991).

Evidence that was seized as a result of an illegal search may not be used against the defendant in a criminal prosecution. *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). This exclusionary rule is aimed at deterring illegal police conduct, but an exception exists where the officer has acted in good faith reliance on a warrant. *See Leon*, 468 U.S. at 922. There is nothing to deter where an officer obtained a search warrant "with objective good faith" and "acted within its scope" in reasonable reliance. *Id.* at 920; *see also id.* at 921 ("Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." (internal quotations and alterations omitted)); *Martin*, 297 F.3d at 1312-13 (stating "courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause"). However, the good faith exception does not apply in four circumstances: (1) if the judge was misled by information that the affiant knew was false or would have known was false except for the affiant's reckless disregard of the truth; (2) if the issuing judge wholly abandoned the judicial role; (3) where the affidavit is "so

lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" or (4) where the warrant is "so facially deficient" that an officer executing it "cannot reasonably presume it to be valid." *Id.* at 1313 (quoting *Leon*, 468 U.S. at 923).

Defendant argues that the search of the Exxx Sxxx Drive residence was unlawful because the affidavit provided no probable cause to believe that criminal activity was occurring at that residence,[3] but he references the wrong affidavit–the affidavit pertaining to the residence located at Rxxx Lxxx. Considering instead the relevant warrant affidavit pertaining to the Exxx Sxxx Drive residence, which the Government attached to its response, the court cannot say that the finding of probable cause was unreasonable or arbitrary in light of the totality of the circumstances. The circumstances outlined in the affidavit by Investigator McCormack were based on his personal knowledge and observation. The C.I. was shown to be reliable based on a controlled transaction. The C.I. and independent surveillance supported the existence of a large-scale and long-term drug operation and clearly showed the Defendant

---

[3] The Government first challenges Defendant's standing because Defendant referred to the Exxx Sxxx Drive residence as the private residence of his girlfriend, not his own. Nonetheless, the affidavit stated that Defendant was observed staying there every night and had registered a car in his name to the address. Also, Defendant did not disavow a connection to the residence in his motion. Therefore, the court finds standing sufficiently established for Defendant to challenge the existence of probable cause to support the warrant and need not further address the issue.

Case No. 3:16cr66-MCR

engaging in a drug trafficking offense. Additionally, the surveillance showed a connection between Defendant and his drug trafficking crime aided by this vehicle, and the residence at Exxx Sxxx Drive, where Defendant parked the same vehicle every night. The required nexus between the crime and the place to be searched can be established by the particular circumstances and the officer's experience and does not require the direct observation of a crime at the location. *See United States v. Bradley*, 644 F.3d 1213, 1263-64 (11th Cir. 2011). Here, the particular facts observed, coupled with McCormack's training and experience, show a sufficient connection between the crime and the residence located on Exxx Sxxx Drive such that it was reasonable to find a fair probability that documentary evidence of the crime would be found in a search of that location. *See United States v. Joseph*, 709 F.3d 1082, 1100 (11th Cir. 2013) (the officer's experience informed him that drug dealers often store proceeds, receipts, and other evidence of the crime at their homes, and this experience plus evidence that the defendant had committed a drug dealing violation provided probable cause to search the defendant's home). This is not to say that every time a defendant commits a crime anywhere his residence is automatically subject to search. Instead, the court finds it was reasonable to conclude that documentary evidence of Defendant's drug trafficking offense would be stored within

Page 10 of 12

the home that appeared to be his residence based on the facts set forth in the affidavit, McCormack's experience, and the strong preference for warrants. Additionally, any doubts are resolved by giving great deference to the issuing judge's determination.

Defendant also challenges the "freshness" of the information in the affidavit, arguing that the information was stale because based on one or two isolated incidents that occurred one to two months prior to the affidavit. Although the probative value of an isolated incident dwindles quickly with the passage of time, when the affidavit recites "protracted or continuous conduct, time is of less significance." *United States v. Walthour*, 202 F. App'x 367, 369 (11th Cir. 2006) (unpublished) (internal quotations omitted). "[S]taleness is an issue which must be decided on the peculiar facts of each case." *United States v. Bervaldi*, 226 F.3d 1256, 1265 (11th Cir. 2000). The circumstances here, construed with deference to the issuing judge's probable cause finding, do not reflect isolated or stale incidents. The C.I. was shown to be reliable and informed the affiant that Defendant had been engaged in drug trafficking for a long time and in large quantities, and Defendant was observed returning to the Exxx Sxxx Drive residence and parking there every night for ten days prior to the affidavit and the controlled buy occurred within ten days of the affidavit. Because the circumstances are more akin to protracted and continuous conduct, it is reasonable

to believe that records or communication devices related to drug dealing would be stored in the residence. The court cannot find that the allegations in the affidavit were stale when the warrant was executed seven days later.

Even assuming that reasonable minds can differ regarding whether the circumstances set out in the warrant affidavit were sufficient to support a finding of probable cause, the *Leon* good faith exception to the exclusionary rule applies. Defendant does not suggest that the officers acted in bad faith, that the issuing judge abandoned his neutral role, or that McCormack presented any knowingly or recklessly false information to the issuing judge. Also, for the reasons recited above, the affidavit pertaining to Exxx Sxxx Drive is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" nor is the warrant "so facially deficient" that an officer executing it could not have reasonably presumed it to be valid. *Martin*, 297 F.3d at 1313. Thus, the officers executing the search were justified in relying in good faith on the warrant.

Accordingly, the Motion to Suppress, ECF No. 23, is **DENIED**.  Trial will be rescheduled by separate order.

**DONE AND ORDERED on this 31st day of October, 2016.**


*M. Casey Rodgers*
**M. CASEY RODGERS
CHIEF UNITED STATES DISTRICT JUDGE**

Case No. 3:16cr66-MCR